# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL OWEN CAMPBELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| | ) | |
| **CITY OF TRUSSVILLE,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

## INTRODUCTION

1. This is an action for legal and equitable relief to redress unlawful discrimination on the basis age and unlawful retaliation against the Plaintiff, Michael Owen Campbell (hereinafter "Plaintiff"), a current employee of the City of Trussville. This suit is being brought to secure the protection of and to redress the deprivation of rights secured by the Age Discrimination Act of 1967 as amended.  Plaintiff requests a trial by jury of all triable issues.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1343(a)(3).

3. Venue is proper in this Court.

1

## PARTIES

4. Plaintiff Michael Owen Campbell ("Plaintiff") is a fifty-seven (57) year old Caucasian, male citizen of the United States and of the State of Alabama. He is a resident of this Judicial District and Division.

5. Defendant City of Trussville ("Defendant" or "City") is a local agency of the State of Alabama. At all times relevant hereto the Defendant has engaged in business in Trussville, Alabama and has been an employer within the meaning of the Age Discrimination Act of 1967 amendments thereto. At all times relevant to this action, the Defendant has maintained and operated a business in Alabama and has fifteen (15) or more employees and is considered an employer for The Age Discrimination Act of 1967 amendments thereto.

## ADMINISTRATIVE PROCEDURES

6. Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination and retaliation that occurred at the City of Trussville.

7. This action seeks to redress unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment.

8. Plaintiff timely filed his Charge of Discrimination (420-2021-02033) against Defendant with the Equal Employment Opportunity Commission on June 3, 2021 (*Exhibit*

*A*), which was filed within 180 days of the commission of the unlawful employment practices alleged herein.

9. Plaintiff timely filed a Second Charge of Discrimination (420-2022-00761) against Defendant with the Equal Employment Opportunity Commission on December 28, 2021 (*Exhibit B*), which was filed within 180 days of the commission of the unlawful employment practices alleged herein

10. On July 15, 2022 and September 8, 2022, respectively, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff a Notice of Right to Sue (*Exhibit C*) regarding his EEOC Charges.

11. Plaintiff filed suit within ninety (90) days of receipt of his Notices of Right to Sue.

12. All administrative prerequisites for filing suit have been satisfied, and Plaintiff entitled to bring this action.

## STATEMENT OF FACTS

13. Plaintiff, Michael Owen Campbell, is a fifty-seven (57) year old Caucasian male.

14. Plaintiff has been discriminated against because of his age and retaliated against because of his prior EEOC charges and federal discrimination lawsuit.

15. Plaintiff retired from the City of Birmingham Police Department after serving for twenty-one (21) years.

16. After retiring from the City of Birmingham Police Department, Plaintiff began employment with the City of Trussville in or around October 2008 as a police officer.

17. Beginning in 2012, Plaintiff successfully completed the necessary testing required by the Personnel Board of Jefferson County ("PBJC") for promotion to the rank of Sergeant within the ranks of the City of Trussville Police Department. Despite numerous applications and interviews, and despite Plaintiff's high level of qualification, Plaintiff was continuously refused promotion to Sergeant with the City of Trussville.

18. On May 30, 2018, Plaintiff filed a charge of discrimination with the EEOC (420-2018-02518) based on age discrimination and retaliation. On October 23, 2019, Plaintiff filed a federal lawsuit under the ADEA against the City of Trussville following the EEOC's completion of the investigation. Plaintiff's lawsuit was in the discovery phase of the litigation through February 28, 2022. During the discovery process, Plaintiff sought the personnel and employment files of officers who had been promoted to Sergeant during the relevant time period. Plaintiff also took the depositions of the current Chief of Police, Jeff Bridges, as well as Lt. David Morrette, Sgt. Clint Riner, and Human Resources Director, Mandy Dixon. The Plaintiff and City of Trussville had numerous discovery disputes during the litigation of Plaintiff's federal lawsuit throughout 2021, including Plaintiff's filings of a motion to compel and motion for temporary restraining order against the City of Trussville.

19. On March 1, 2021, Chief Rush announced the opening of a K9 Sergeant Position. In the announcement, Chief Rush stated that the duties would be the direct supervision of the K9 Unit and being responsible for the staffing and supervision of all events requiring police at the new Trussville Entertainment District. This Sergeant position will require the candidate be on the current PBJC Sergeant list and a current certification as a K9 handler. Currently, there is only one officer in the department who is a K9 handler and also on the PBJC Sergeant list.

20. On March 2, 2021, Plaintiff responded to Chief Rush stating that he wished to apply and be considered for this position. Chief Rush appeared irritated in his response and replied asking if Plaintiff was a certified K9 handler. Plaintiff responded that he was not currently a certified K9 handler but was willing to attend a certification course before or after occupying the position. To Plaintiff's knowledge, prior sergeants assigned over the K9 Unit have not been required to possess a K9 certification and the Trussville Police Department Standard Operating Procedures do not mandate K9 certification before appointment. Chief Rush responded to Plaintiff's email stating that Plaintiff would not be considered for the new sergeant position and stated "[t]he announcement clearly stated the requirements and you decided it was necessary to ignore those requirements and apply anyway. This disregard of clearly stated requirements is not how I would expect a candidate to behave for any promotional position within the department." The requirement that a candidate hold a K9 certification for the newly opened sergeant position is nothing more

than an effort to disqualify the Plaintiff and circumvent the rules and procedures for appointing a new sergeant. The new position would be supervising only two K9 units and prior sergeants assigned over the K9 Unit have not been required to possess a K9 certification. Further, overseeing the staffing and supervision of all events requiring police at the new Trussville Entertainment District is wholly unrelated to possessing a K9 certification or the K9 unit. This is another example of discrimination and retaliation against the Plaintiff.

21. On March 4, 2021, Plaintiff sent two requests through his chain of command: one to review his department training file and the other to see his Field Training Officer file. Plaintiff's requests were denied and Plaintiff was given the following reason for the denial: "Per Capt. Morrette, given the fact Officer Campbell has a pending lawsuit against the City of Trussville regarding the terms of his employment, we will not provide any further requested documents in reference to his employment. Officer Campbell will need to have his attorney submit any further requests through our city attorneys in an effort to obtain this information." Plaintiff's ability to review his training, FTO, and personnel files was not an issue before the amended complaint was filed. The denial of Plaintiff's ability to view his training and FTO files is unlawful and retaliation for Plaintiff's filing of the amended complaint. There is no justification for the denial as Plaintiff is still employed with the Trussville Police Department.

22. On September 3, 2021, Plaintiff was informed that he was not selected for the Direct Enforcement Unit Investigator position that Plaintiff applied for. A younger, less experienced officer, Officer M. Montana, was selected for the position.

23. On October 6, 2021, Plaintiff was informed that he was not selected for one of six Field Training Officer positions that he applied for. Three younger, less experienced officers, were selected for the positions. In fact, Plaintiff served as the field training officer for one of the officers selected for the position.

24. On October 27, 2021, a protective order was entered concerning the discovery materials lawfully sought by Plaintiff in the federal case.

25. On October 27, 2021, Plaintiff was informed that he would be required to undergo a fit-for-duty test by the City of Trussville. The test was mandatory and could potentially lead to Plaintiff's termination. The City of Trussville had no rational basis or justification to require Plaintiff to submit to the test, and the test was scheduled only two days after the District Court in Plaintiff's current federal lawsuit ordered the City of Trussville to produce documents pursuant to Plaintiff's discovery requests. This test was required in retaliation for the discovery requests and participation in litigation of Plaintiff's federal lawsuit against the City of Trussville. The City of Trussville used the fit-for-duty test as an intimidation tactic to dissuade Plaintiff from continuing to pursue his federal lawsuit. The test was scheduled for November 10, 2021. Two days before the test, counsel for the City of Trussville requested to meet with Plaintiff's attorneys to discuss settlement. When

Plaintiff would not agree to settle for an amount satisfactory to the City of Trussville, the City's counsel make known his displeasure and said that the fit-for-duty test would move forward. The fit-for-duty test is an intense psychological evaluation of an officer and an extreme burden on Plaintiff given the fact that Plaintiff's employment with the City is contingent upon his passing of the test. The proximity of this letter to the parties' discovery dispute cannot be understated. At no time during Plaintiff's years of employment with the City of Trussville has he been required to submit to this test, other than his initial pre-employment evaluation. In fact, Plaintiff had been on scheduled medical leave for shoulder surgery that the Plaintiff had on August 13, 2021. Since the surgery, Plaintiff was using personal sick leave time and was instructed not to report to work until he was cleared by his doctor for full duty. On October 22, 2021, Plaintiff informed the City of Trussville that he was scheduled for an additional 6 weeks of physical therapy, going twice weekly for a total of 12 sessions, beginning November 1, 2021. Plaintiff was not set to return to full duty by his doctor until December 2021 or January 2022. Until that time, Plaintiff was continuing to use accrued sick leave and was not yet reporting for duty. In the letter given to Plaintiff requiring Plaintiff to submit to the fit-for-duty test, the City of Trussville does not refer to specific instances of behavior that would warrant such a test. Indeed, the only information cited is the Personnel Board of Jefferson County Rule 13.22 which states that such examination is "necessary to determine whether the employee is able to perform the essential functions of his or her job, with or without reasonable accommodation, without constituting

a hazard to himself or herself, and without endangering the safety, health, and welfare of fellow employees and the public." The City of Trussville cannot point to any behavior of the Plaintiff that would constitute a hazard or endanger the safety of fellow officers and citizens necessitating the fit-for-duty test, especially considering the fact that Plaintiff was not even reporting for duty at the time. Moreover, when giving deposition testimony in Plaintiff's current lawsuit, neither Rush, Dixon or Morrette could give any examples of Plaintiff's behavior that supported their assertions of insubordination, hostility, danger to public and coworkers, poor productivity, etc. as alleged in their sworn affidavits justifying the fit-for-duty test. The City of Trussville had failed to produce any objective evidence necessary for the psychological Fitness for Duty Examination of Plaintiff. The joint affidavit of Chief Rush and Morrette, the affidavit of Human Resources Director Mandy Dixon, and their depositions all failed to document any proof of their allegations and accusations against Plaintiff and his ability to perform his job safely and effectively. Additionally, the City of Trussville cannot and has not produced any documented or validated proof, evidence, or reasonable belief which would lead a reasonable individual to believe that Plaintiff projects a hazard to himself and endangers the safety, health and welfare of City of Trussville employees, his co-workers or the public. The City of Trussville also failed to document or produce a reasonable belief that Plaintiff's ability to perform essential job functions are or may be impaired by a medical condition or psychological disorder and that Plaintiff will or may pose a direct threat due to said medical condition(s) before ordering him to take the

9

Fitness for Duty Examination. Human Resources Director for the City of Trussville, Mandy Dixon, failed to document and base Plaintiff's Fitness for Duty Examination on objective evidence obtained through Ms. Dixon's investigation prior to making the determination of Plaintiff's condition prior to making the disability-related inquiry and medical examination of Plaintiff by psychologist Dr. K. Brown.

26. On November 20, 2021, Plaintiff was informed that he was not selected for the Corporal position that he applied for. A younger, less experienced officer, Officer J. Dunn, was selected for the Corporal position. In fact, Officer Dunn was one of Plaintiff's trainees when Plaintiff was a field training officer.

27. On December 16, 2021, Plaintiff was informed by the City of Trussville that his shift assignment was being changed. Effective January 15, 2022, Plaintiff was being removed from the Patrol Division, where Plaintiff has worked for over 13 years, and being reassigned to Dayshift working in the jail. This reassignment and change in responsibilities is so substantial and material that it alters the terms, conditions, and privileges of Plaintiff's employment with the City of Trussville. Plaintiff will lose the autonomy of his position as a patrol officer and will be required to remain at the jail for the entirety of his shift. Plaintiff will suffer a loss of prestige and reputation because of this reassignment, as officers that have been disciplined by the City of Trussville are regularly reassigned to the jail. Throughout the City of Trussville Police Department, a reassignment to the jail is generally regarded by officers as a demotion. Because of this

reassignment, Plaintiff has been forced to return his take-home patrol car, a benefit Plaintiff had for over 3 years as a patrol officer. Plaintiff did not request this change in assignment and it is being done as discrimination and retaliation for Plaintiff EEOC charges and federal lawsuit.

28. On January 15, 2022, Plaintiff began his involuntarily shift from Night Shift Patrol Division to the Day Shift in the Trussville City Jail. The Shift Preference / Shift Bid (Seniority) usually given to officers was not taken into consideration by the City of Trussville. Younger officers were allowed to transfer to requested positions, whereas Plaintiff was not. Upon his reassignment to the City Jail, Plaintiff was senior to the other Police Officers working in the City Jail just as his predecessor, now retired Trussville Police Officer Mike Roberson, was. However, Plaintiff was not permitted to have a "take home" city vehicle as Officer Roberson was, even though the City Jail has a vehicle assigned but is rarely driven. Jail Supervisors continuously encourage correctional officers to drive the vehicle to lunch so that the battery does not run down from sitting unused. Plaintiff is 1 of only 2 Trussville Police Officers who does not have a City Take Home Vehicle. The other officer, Officer Cooley, never successfully passed the Training Car and has been assigned to the City Jail since being hired.

29. On January 15, 2022, Plaintiff was informed that he was not selected for a School Resource Officer position that he applied for on November 4, 2021. A younger, less experienced officer, Officer B. Brown, was selected for the School Resource Officer

11

position.

30. On February 8, 2022, Plaintiff was informed that he was not selected for an Evidence Technician position that he applied for on December 9, 2021. Younger, less experienced officers, Officer R. Curran and D. Taylor, were selected for the Evidence Technician positions.

31. On September 20, 2022, Plaintiff was denied the position of Detective / Investigator which he applied and interviewed for.  A much younger, less experienced officer was selected.  The position would have been a 5% pay incentive and City Take Home Car.  Lt. Riner, who Plaintiff deposed and is named in the first lawsuit as having taken part in my FTO termination, was on the interview Board for the Investigator position.

32. On September 20, 2022, Plaintiff was also denied the position of Sergeant which he applied and interviewed for.  A younger, less experienced officer was selected. The position would come with three 5% step raises and City Take Home Car.  Lt. Riner, who Plaintiff deposed and is named in the first lawsuit as having taken part in my FTO termination, was on the interview Board for the Sergeant position.

33. On July 12, 2022, Plaintiff was denied any future opportunity to work overtime in the Patrol Division when a shift supervisor requested the need for additional personnel due to short staffing on their shift.  Plaintiff was informed that he could only work overtime in the jail or during court.  Patrol Officers have repeatedly worked overtime

12

in the jail and court, but Plaintiff was singled out and denied the opportunity for overtime in patrol. To date, Plaintiff has over 21 years of patrol experience.

34. On June 21, 2022, Plaintiff was denied the open position of Evidence Technician which he had applied for. This position came with a 5% pay incentive. A younger, less experienced officer which had only worked for the Trussville Police Department since March 2022 (approximately 3 months) was selected for the position. Plaintiff and the officer selected were the only applicants for the position.

35. In or about June 2022, Plaintiff applied for the open position of School Resource Officer. Plaintiff was the only officer that applied for the position until Captain Cardwell contacted and appointed a prior School Resource Officer within the Trussville Police Department who had resigned from the position months earlier and returned to the Patrol Division. Plaintiff was denied this position as School Resource Officer.

36. Plaintiff was highly qualified for each of the positions he applied for and was not selected due to further discrimination and retaliation by the City of Trussville for Plaintiff's previous EEOC charges and federal lawsuit.

37. The Defendant has a habit and/or practice of allowing and condoning discrimination based on age against its employees.

38. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages as a consequence of Defendant's unlawful conduct.

## COUNT ONE
## PLAINTIFF'S CLAIMS OF AGE DISCRIMINATION
## IN VIOLATION OF THE AGE DISCRIMINATION ACT OF 1967 AS AMENDED.

39. Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

40. By and through the conduct as described herein, the Defendant is liable to Plaintiff for violations of the Age Discrimination Act of 1967, as amended, which prohibits discrimination against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age.

41. Plaintiff is 57 years of age and a member of a protected group under the Age Discrimination Act of 1967.

42. Plaintiff is highly qualified for the position he currently holds of Police Officer with the City of Trussville.

43. The Defendant, City of Trussville, as described herein, has unlawfully refused on numerous occasions to promote Plaintiff. The Defendant has refused to hire Plaintiff for any position Plaintiff has applied for as described in this complaint. Plaintiff was highly qualified for each of the positions he applied for and was not selected due to age discrimination by the City of Trussville.

44. Each candidate hired for the above stated promotions was younger, much less experienced, and much less qualified than Plaintiff.

45. Plaintiff has been further discriminated against based on his age in the terms and conditions of his employment in that: Plaintiff was involuntarily transferred to a lesser position when younger, less qualified officers were not; Plaintiff was denied any future opportunity to work overtime in the Patrol Division when younger, less qualified officers were given the opportunity to work this overtime; Plaintiff was not permitted to have a "take home" city vehicle while younger, less qualified officers were; and that Plaintiff was required to undergo a baseless fit-for-duty examination when younger officers were not.

46. The Defendant has a habit and/or practice of allowing and condoning discrimination based on age against its employees.

47. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages as a consequence of Defendant's unlawful conduct.

### COUNT TWO
### PLAINTIFF'S CLAIMS OF RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION ACT OF 1967 AS AMENDED

48. Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

49. By and through the conduct as described herein, the Defendant is liable to Plaintiff for violations of the Age Discrimination Act of 1967, as amended, which makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in any investigation or proceeding under the

ADEA.

50. Plaintiff is 57 years of age and a member of a protected group under the Age Discrimination Act of 1967.

51. Plaintiff engaged in a protected activity under the Age Discrimination Act of 1967 by filing charges of discrimination with the EEOC, as described herein, and by the filing of a federal age discrimination lawsuit against the Defendant. Plaintiff has further engaged in a protected activity under the Age Discrimination Act of 1967 by participation in the litigation of his federal age discrimination lawsuit.

52. Plaintiff is highly qualified for the position he currently holds of Police Officer with the City of Trussville.

53. The Defendant, City of Trussville, as described herein, has unlawfully refused on numerous occasions to promote Plaintiff. The Defendant has refused to hire Plaintiff for any position Plaintiff has applied for as described in this complaint. Plaintiff was highly qualified for each of the positions he applied for and was not selected due to unlawful retaliation by the City of Trussville because of Plaintiff's EEOC charges under the Age Discrimination Act of 1967 and because of Plaintiff's in the litigation of his federal age discrimination lawsuit.

54. The Defendant, City of Trussville, has also unlawfully retaliated against Plaintiff after Plaintiff's protected activities in that: Plaintiff was involuntarily transferred to a lesser position; Plaintiff was denied any future opportunity to work overtime in the

Patrol Division; Plaintiff was not permitted to have a "take home" city vehicle; and that Plaintiff was required to undergo a baseless fit-for-duty examination.

55. The Defendant has a habit and/or practice of allowing and condoning unlawful retaliation based on age against its employees.

56. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages as a consequence of Defendant's unlawful conduct.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief after a trial by jury:

A. Grant Plaintiff a declaratory judgment that the practices complained of herein are violative of the provisions of the Age Discrimination Act of 1967 and the amendments thereto;

B. Grant Plaintiff an order enjoining Defendant and all persons acting in concert with Defendant from engaging in discriminatory and retaliatory employment practices;

C. Grant Plaintiff the appropriate amounts of backpay, interest, benefits, damages, pay raises with back pay, and reinstatement to the job position from which he was discriminatorily denied, or in the alternative, front pay;

D.  Grant Plaintiff an award of compensatory damages, including but not limited to an award for mental anguish and emotional distress;

E.  Award Plaintiff his costs and expenses, including an award of reasonable attorney's fees; and,

F.  Award such other relief as may be appropriate.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL CLAIMS TRIABLE.**

                                                           Respectfully Submitted,

                                                           */s/ Scott Morro*
                                                           Scott Morro (ASB-4954-C30M)
                                                           Attorney for Plaintiff
                                                           Morro Law Center, LLC
                                                           P.O. Box 1644
                                                           Gardendale, AL 35071
                                                           Telephone: (205)631-6301
                                                           Fax: (205) 285-8542
                                                           morrowlawcenter@bellsouth.net

**DEFENDANTS TO BE SERVED VIA PRIVATE PROCESS SERVER**